## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

### CASE NO:

Madison Sparks, on behalf of herself
and all others similarly situated,

      Plaintiff(s),
      v.

Kyodai Sushi Rock Café, Inc.,
Tae N. Oh, individually, and
Kyung Eun Oh, individually,

      Defendants.

_____/

## COLLECTIVE/CLASS ACTION COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, MADISON SPARKS ("Plaintiff") on behalf of herself and all others similarly situated, and pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, Fla. Stat. 448.440, and Art. X, Sec. 24 of the Florida Constitution, files this Collective/Class Action Complaint for Damages and Demand for Jury Trial against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. ("Sushi Rock") TAE N. OH ("TAE") and KYUNG EUN OH ("KYUNG") (collectively referred to as "Defendants"), for failure to pay restaurant servers state and federal minimum wages and overtime wages during the relevant time period, as follows:

### INTRODUCTION

1.      Plaintiff brings this collective and class action under the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA") on behalf of herself and all restaurant servers who work or have worked at the Kyodai Sushi restaurant in Orange Park, Florida during the applicable statute of limitations. Defendants committed state and federal minimum wage violations because they required restaurant servers to share a portion of their tips with employees who do not traditionally receive tips, including but not limited to chefs, supervisors, managers,

owners and dishwashers.  Defendants also violated the minimum wage requirements under Florida and federal law because they compensate restaurant servers at the reduced "tip credit" wage notwithstanding that servers are required to spend more than 20% of their shifts performing non-tipped duties and responsibilities.  Defendants have also failed to properly compensate Plaintiff and similarly situated servers in accordance with the federal overtime laws when servers work in excess of 40 hours per week. As a result, Plaintiff, and similarly situated restaurant servers have been denied applicable wages in one or more workweeks during the relevant time period.

## PARTIES

2.     During all times material hereto, Plaintiff was a resident of Orange Park, Florida, over the age of 18 years, and otherwise *sui juris.*

3.     Plaintiff and the **FLSA putative collective members** are/were restaurant servers who worked for Defendants within the last three (3) years in Orange Park, Florida.

4.     Plaintiff and the **FMWA putative class members** are/were restaurant servers who worked for Defendants within the last five (5) years in Orange Park, Florida.

5.     Plaintiff worked for Defendants as a restaurant server from in or around November 2021 until on or about January 15, 2022.

6.     The proposed collective and class members worked for Defendants in the same capacity as Plaintiff in that they were restaurant servers for Defendants at their Japanese Hibachi Restaurant, which is known as "Kyodai Hibachi Grill" and "Kyodai Sushi Rock" and is located in Orange Park, Florida.

7.     Plaintiff seeks certification of five (5) separate collectives under 29 U.S.C. § 216(b) for violations of the FLSA as follows:

**Tip Credit Collective: All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who were required to share a portion of their tips with supervisors, owners, managers, chefs or dishwashers.**

**80/20 Lunch Shift Collective: All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their lunch shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.**

**80/20 Dinner Shift Collective: All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their dinner shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.**

**Unpaid Labor Collective: All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to work without compensation for between 30-minutes and 1-hour during any shift.**

**Overtime Collective: All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who worked more than forty (40) hours in any workweek and were not compensated overtime wages.**

8.    Plaintiff also seeks certification of four (4) separate classes under Fed. R. Civ. P. 23 and the FMWA and Florida Constitution for violations of the Florida Minimum Wage Act, as follows:

**Tip Credit Class: All restaurant servers who worked for Defendants in Orange Park, Florida during the five (3) years preceding this lawsuit who were required to share a portion of their tips with supervisors, owners, managers, chefs, dishwasher or bus boys.**

**80/20 Lunch Shift Class:** All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their lunch shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.

**80/20 Dinner Shift Class:** All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their dinner shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.

**Unpaid Labor Class:** All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to work without compensation for between 30-minutes and 1-hour during any shift.

9. The precise size and identity of each collective and class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of class members in each class above exceeds 50 restaurant servers.

10. During all times material hereto, Defendant, SUSHI ROCK, was a Florida For-Profit Corporation operating and transacting business within Clay County, Florida, within the jurisdiction of this Honorable Court.

11. Defendant, TAE, is a resident of Clay County, Florida, and is subject to the jurisdiction of this Honorable Court.

12. Defendant, KYUNG, is a resident of Clay County, Florida, and is subject to the jurisdiction of this Honorable Court.

13. Defendants own, operate and control the Kyodai Sushi Rock Hibachi Restaurant and Grill located at 210 Orange Park Northway, Orange Park, FL 32073.

14.     Defendants were Plaintiff's "employer," as defined by the FLSA and FMWA, during all times pertinent to the allegations herein.

15.     During all times material hereto, Defendants were vested with the ultimate control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Kyodai Sushi Rock Hibachi Restaurant and Grill located at 210 Orange Park Northway, Orange Park, FL 32073.

16.     Defendants implement uniform pay, tip, and time keeping practices at the Kyodai Sushi Rock Hibachi Restaurant and Grill as they apply to all restaurant servers.

17.     Plaintiff and putative collective and class members are/were non-exempt, hourly restaurant servers.

## JURISDICTION AND VENUE

18.      This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Minimum Wage Act ("FMWA") and Article X Section 24 of the Florida Constitution to recover damages from Defendants, injunctive relief, and reasonable attorney's fees and costs.

19.     This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367

20.     The acts and/or omissions giving rise to this dispute took place within Clay County, Florida, which falls within the jurisdiction of this Honorable Court.

21.     Defendants regularly transact business in Clay County, Florida, and jurisdiction is therefore proper.

22.     Venue is also proper within Clay County, Florida.

23.     Plaintiff fulfilled all conditions precedent required to bring her class action claims under the FMWA.

24.     More specifically, on January 28, 2022, through her counsel, Plaintiff served Defendants with a written pre-suit demand and notice regarding her FMWA claims, requesting that Defendants pay her and the putative FMWA classes the minimum wages owed to them. Defendants refused to pay Plaintiff or the FMWA classes any wages whatsoever within the statutory notice period. This lawsuit followed.

## FLSA COVERAGE

25.     Defendant, KYODAI, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendants had at least two employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

26.     During all time periods pertinent hereto, Defendant, KYODAI's employees regularly handled goods such as food, beverages, napkins, silverware, appliances, rice, beer, vodka, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, soy sauce, zucchini, wings, calamari, octopus, mahi mahi, salmon, onions, peppers, skewers, teriyaki glaze, crab, vinegar sauce, tofu, soy beans, shrimp, beef, steak, noodles, eel, scallops, lobster, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, mints, flour, sugar, coffee, tea, soda, water bottles, and other materials that had previously travelled through interstate commerce.

27.     Defendant, KYODAI, had an annual gross revenue in excess of $500,000.00 in 2017, 2018, 2019, 2020, 2021 and is expected to gross in excess of $500,000.00 in 2022.

## GENERAL ALLEGATIONS

28.     During all times material hereto, Defendants, TAE and KYUNG were the owners, operators, and corporate officers of Kyodai Sushi Rock Hibachi Restaurant and Grill.

29.     Plaintiff worked for Defendants as a restaurant server during her employment period.

30.     During Plaintiff's employment period, Defendants did not require Plaintiff or any other employees to use a time-keeping system to track their working hours.

31.     Upon information and belief, Defendants selected a random and arbitrary amount to pay Plaintiff and the putative collective and class members at the end of each pay period (because Defendants' did not keep and maintain accurate time records for servers).

**DEFENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED
SERVERS TO SHARE TIPS WITH NON-TIPPED EMPLOYEES**

32.     During training, Defendants instructed Plaintiff that she was required to share her tips with supervisors, managers, owners, chefs and/or dishwashers at the restaurant.

33.     At the end of each shift, Defendants took Plaintiff's tips and distributed them as follows: 50% to chefs, 5% to dishwashers and bus boys, and the remaining 45% to Plaintiff.

34.     After this unequitable and unlawful distribution of tips, Defendants occasionally required Plaintiff to also share her tips with a supervisor.

35.     In addition, when Plaintiff (or any other server) was late to work, Defendants penalized Plaintiff and the members of the collectives and classes by deducting tips from the servers in an equal amount to the number of minutes they were late to work – for example, if Plaintiff was 15-minutes late to work, Defendants pilfered $15 of her hard-earned tips.

36.     Chefs, dishwashers, supervisors, managers and owners are not traditionally tipped restaurant employees under the FLSA and FMWA and are forbidden from participating in tip pools.

## DEFENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED SERVERS TO SPEND MORE THAN 20% OF EACH LUNCH SHIFT ON NON-TIPPED DUTIES

37.     Federal law prohibits employers from taking a tip credit when an employee performs non-tip generating duties for more than 20% of their shift.  Rafferty v. Denny's Inc., 13 F4th 1166, 1188 (11th Cir. 2021). In other words, when restaurant servers spend more than 20% of any respective shift performing non-tip generating duties, they must be paid the full minimum wage, as opposed to the reduced minimum wage.[1]  Id.

38.     Defendants claimed a tip credit for all of Plaintiff's work, including during shifts in which Plaintiff spent more than 20% of her time on non-tip producing duties and side work.

39.     In the year 2017, servers were compensated at a reduced wage of $5.08 per hour for their first forty (40) hours of work per week. In 2018, servers were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.  Defendants paid servers the reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020, $5.63 per hour in from January 1, 2021 through September 29, 2021 and $6.98 per hour from September 30, 2021 through the present.

40.     During her employment period with the Defendants, Plaintiff and members of the putative collectives and classes of servers were assigned both "lunch" shifts and "dinner" shifts.

41.     The typical lunch shift schedule is from about 10:30 am until about 2:30 pm. Kyodai Sushi Rock Hibachi Restaurant and Grill opens to the public at 11:00 am and temporarily closes to the public at 2:00 pm – the restaurant reopens to the public at around 4:00 pm for the dinner shift.

---

[1] The maximum tip credit permissible under federal law is $2.13 cents. However, as stated above, an employer cannot claim a tip credit if its employee spends more than 20% of any respective shift performing non-tip producing duties.

42.     Prior to opening the restaurant, from 10:30 am to 11:00 am – a period of approximately thirty (30) minutes – Defendants instructed Plaintiff and all other similarly situated restaurant servers to prepare soup, make salads, make sauces, clean bathrooms, scrub and wash trays and pans, slice lemons, fill salt and pepper shakers, roll silverware, set tables, clean the beverage stations, set chairs, clean windows, clean tables, clean condiments, vacuum and mop the floors, clean the outside of the restaurants, unstack chairs, make coffee, and perform additional "non-tipped" duties which are merely incidental to the employees' primary duties in the restaurant. Furthermore, prior to opening to the public, Plaintiff and the other servers were paid the reduced tip credit wage, even though the restaurant was closed and its employees could not earn any tips.

43.     Before completing each "lunch" shift, Plaintiff and the putative class members were required to perform the same "non-tipped" duties and responsibilities as outlined in the preceding paragraph. At a minimum, when combining the pre-shift and post-shift duties, Plaintiff spent at least one (1) full hour performing non-tipped duties and responsibilities. Accordingly, Plaintiff and the class of similarly situated servers spent approximately 25% of the lunch shift performing non-tip producing duties but were nevertheless paid the reduced wage for tipped employees.

44.     In addition, Defendants to not pay Plaintiff and other servers for at least thirty (30) minutes of work performed during each lunch shift.

45.     As a result, Plaintiff and members of the putative collectives and classes are entitled to recover the applicable tip credit for the time they spent performing "non-tipped" incidental duties during each lunch shift, as opposed to the reduced wage they received when performing these non-tipped duties and side work.

46.     Plaintiff and the federal minimum wage collective members are entitled to recover at least federal minimum wage for each hour spent performing "non-tipped" incidental work

during lunch shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

47.     Similarly, Plaintiff and the Florida minimum wage class members are entitled to recover at least the Florida minimum wage for each hour spent performing "non-tipped" incidental work during lunch shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

48.     Defendants did not maintain time records during the previous five (5) years.

## DEFEENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED SERVERS TO SPEND MORE THAN 20% OF DINNER SHIFTS PERFOMRING NON-TIPPED DUTIES

49.     When working the evening "dinner" shift, Plaintiff and all other similarly situated servers report to work at around 3:00 p.m. and are scheduled to work through around 11:00 p.m. During the entire dinner shift, Plaintiff and all other servers are paid a reduced wage for tipped employees (even though there are no customers for at least 2-hours of each dinner shift).

50.     However, before and after each "dinner" shift, Plaintiff and the putative class members are instructed to prepare soup, make salads, make sauces, clean bathrooms, scrub and wash trays and pans, slice lemons, fill salt and pepper shakers, roll silverware, take out the trash, set tables, clean the beverage stations, set chairs, clean windows, clean tables, clean condiments, vacuum and mop the floors, clean the outside of the restaurants, stack and unstack chairs, make coffee, and perform additional "non-tipped" duties which are merely incidental to the employees' primary duties in the restaurant.

51.     In addition, Defendants do not pay Plaintiff and other servers for at least thirty (30) minutes of work performed during each dinner shift.

52.     During a typical "dinner" shift, Plaintiff and putative class members are regularly required to spend a total of ***more than* 20%** of the shift performing the aforementioned "non-tipped" duties and responsibilities.

53.     In the year 2017, servers were compensated at a reduced wage of $5.08 per hour for their first forty (40) hours of work per week. In 2018, servers were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.  Defendants paid servers the reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020, $5.63 per hour in from January 1, 2021, through September 29, 2021 and $6.98 per hour from September 30, 2021 through the present.

54.     As a result, Plaintiff and members of the putative collectives and classes are entitled to recover the applicable tip credit for the time spent each shift performing "non-tipped" incidental duties, as opposed to the reduced wage they received.

55.     Plaintiff and the federal minimum wage collective members are entitled to recover at least federal minimum wage for each hour spent performing "non-tipped" incidental work during dinner shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

56.     Plaintiff and the Florida minimum wage class members are entitled to recover at least the Florida minimum wage for each hour spent performing "non-tipped" incidental work during dinner shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

## CLASS ALLEGATIONS

57.     Plaintiff and the putative class members were all subject to the same tip disgorgement policy, which permitted supervisors, managers, owners, chefs, and dishwashers to pilfer restaurant servers' hard-earned tips during the course of the previous five (5) years.

58.     Class members are treated equally and similarly in the Orange Park, FL restaurant that is owned and operated by Defendants, in that they were denied federal minimum wages when they spent more than 20% of their lunch shifts and dinner shifts performing "non-tipped" work.

59.     Defendants employed at least fifty (50) servers in Orange Park, FL who were required to work without pay for at 30-minutes to 1-hour per shift during the course of the previous five (5) years.

60.     At all times material hereto, Defendants had express or constructive knowledge of the work performed by Plaintiff and other similarly situated employees.

61.     Moreover, at all times material hereto, Defendants had express or constructive knowledge of the time Plaintiff and other similarly situated employees worked but failed to keep and maintain accurate time records, thereby violating state and federal law.

62.     Plaintiff and the class members performed the same job duties for Defendants in Orange Park, Florida as restaurant servers, and were required to work without pay, and were otherwise paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the class members properly when more than 20% of their shifts consisted of "non-tipped" duties and side work.

63.     During their employment, Plaintiff or one or more of the class members complained about the illegal practices above and Defendants took no action to stop the illegal practices.

64.     Although Defendants were aware of the requirements of the FLSA and FMWA, and the pertinent regulations thereto, Defendants' willfully and/or intentionally failed to pay Plaintiff and the class members in accordance with the state and federal law.

65.     As a result of Defendants' intentional and willful failure to comply with the FLSA and FMWA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of her claims.

**COUNT I – FED. R. CIV. P. 23 CLASS ACTION**
**FOR FLORIDA MINIMUM WAGE VIOLATIONS**
**(UNLAWFUL TIP RETENTION)**

66.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth fully herein.

67.     Plaintiff has fulfilled all conditions precedent required to bring this action under the Florida Minimum Wage Act and Florida Constitution.

68.     Plaintiff and other similarly situated servers customarily received tips as part of their compensation.

69.     The Florida tip credit requirements are modeled after the FLSA.

70.     Under the FLSA, pursuant to 29 U.S.C. 203(m)(2)(B), "an employer may not keep tips received by its employees for any purposes, including allowing **managers** or **supervisors** to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."[2]

---

[2] On March 23, 2018, Congress passed the Consolidated Appropriations Act of 2018 (CAA), which amended Section 230(m) to add the following language: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  The CAA also amended another FLSA provision – Section 216(b) – to state that "[a]ny employer who violates section 203(m)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

71.     During the relevant time period, Defendants enforced a restaurant-wide policy that required Plaintiff and similarly situated restaurant servers to allow supervisors, managers, owners, chefs and dishwashers to keep a portion of the tips restaurant servers earned.

72.     Defendants also pilfer tips from restaurant servers when they are late to work. On information and belief, this money is taken and retained by supervisors, managers and/or owners. More specifically, if Plaintiff or any other restaurant server was 15-minutes late to work, for example, Defendants pilfered $15 of hard-earned tips.

73.     Defendants have enforced this policy for the previous five (5) years.

74.     Plaintiff and similarly situated Restaurant Servers (hereinafter the "Tip Credit Class") are entitled to recover the tip credit for the previous five (5) years **and** the sum of all tips that they were required to surrender to supervisors, managers, owners and chefs from March 23, 2018 through the present.

75.     Defendants therefore forfeit any tip credit under Florida law and owe each Server *at least* $3.02 for each hour of work they performed within the past 5 years in time periods in which Defendants failed to comply with the reduced wage requirements.

76.     In 2017, the Florida Minimum Wage was $8.10 per hour.

77.     In 2018, the Florida Minimum Wage was $8.25 per hour.

78.     In 2019, the Florida Minimum Wage was $8.46 per hour.

79.     In 2020, the Florida Minimum Wage was $8.56 per hour.

80.     From January 1, 2021, through September 29, 2021, the Florida Minimum Wage was $8.65 per hour.

81.     From September 30, 2021, through the present the Florida Minimum Wage has $10.00 per hour.

82.     Plaintiff and the proposed Tip Credit Class members were subject to similar violations of the FMWA and Florida Constitution.  Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendants' failure to pay Florida's mandated minimum wages:

> **All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who were required to share a portion of their tips with supervisors, owners, managers, chefs, dishwasher or bus boys.**

## RULE 23 CLASS ALLEGATIONS

83.     Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class (the "Tip Credit Class").

84.     The putative Tip Credit Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage based upon the Defendants' companywide policy of permitting supervisors, managers, owners, chefs and dishwashers to pilfer tips, thereby invalidating Defendants' ability to claim a tip credit.

85.     *Numerosity*: Defendants employed in excess of 50 Servers in the class during the past five (5) years who were paid the applicable reduced wage when Defendants permitted supervisors, managers, owners, chefs and dishwashers to pilfer tips. Given Defendants' considerable size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

86.     Plaintiff and the class members were subject to the same policies.

87.     *Commonality*: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff.  Such questions common to the Class include, but are not limited to the following:

(a)     Whether Plaintiff and the Tip Credit Class were "employees" of Defendants;

(b)     Whether Plaintiff and the Tip Credit Class's hours were properly recorded;

(c)     Whether Defendants violated the Florida minimum wage rights of Plaintiff and the Tip Credit Class under the FMWA by permitting supervisors, managers, chefs, owners and dishwashers to receive a portion of servers' tips;

(d)     Whether Defendants willfully or intentionally refused to pay Plaintiff and the Tip Credit Class the Florida minimum wages as required under Florida law;

(e)     Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and

(f)     The nature, extent, and measure of damages suffered by the Plaintiff and the Tip Credit Class based upon Defendants' conduct.

88.     *Typicality:* Plaintiff's claims are typical of the Tip Credit Class members' claims. Plaintiff's claims arise from the Defendants' company-wide policy of requiring all restaurant servers to surrender a portion of their tips to supervisors, managers, owners, chefs and dishwashers which resulted in them not receiving the applicable Florida minimum wage.

89.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Tip Credit Class.  Plaintiff has no interest that might conflict with the interests of the Tip Credit Class. Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

90.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

91.     Defendants have acted on grounds generally applicable to the Tip Credit Class, thereby making relief appropriate with respect to the Tip Credit Class as a whole.  Prosecution of separate actions by individual members of the Tip Credit Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Tip Credit Class that would establish incompatible standards of conduct for Defendants.

92.     Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Tip Credit Class.

93.     Plaintiff and the Tip Credit Class members performed the same job duties, as restaurant servers, and were paid in an identical manner by Defendants.

94.     Plaintiff and the Tip Credit Class members were not paid proper Florida minimum wage for certain hours worked because they were all subject to the same tip sharing policy, which permitted and encouraged supervisors, managers, owners, chefs and dishwashers to retain servers' hard-earned tips.

95.     Defendants were aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Tip Credit Class members in accordance with the law.

96. The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative Tip Credit Class members exceeds 50 Servers.

97. This action is intended to include each and every server who worked at Kyodai Sushi Rock Hibachi Restaurant and Grill located in Orange Park, Florida, during the past five (5) years who was subject to Defendants' unlawful tip policies.

98. During all material times hereto, Plaintiff and all Tip Credit Class members were non-exempt employees of Defendants.

99. Plaintiff and the Tip Credit Class members performed work as servers which was an integral part of the business for Defendants.

100. Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages permitting Supervisors, Managers, Owners, Chefs and Dishwashers and to retain tips from Plaintiff and all other restaurant servers during the relevant time period.

101. The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the Defendants' unlawful tip policy within the previous five (5) years.

102. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a pre-suit Florida Minimum Wage demand letter as required by Florida law before this claim was filed.

103. More than fifteen (15) calendar days have passed since Defendants received the Florida Minimum Wage demand letter and Defendants have failed to tender full payment to compensate Plaintiff and the Tip Credit Class members for the Florida minimum wages they are owed.

104.    The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

105.    Absent class-wide redress of these claims, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

106.    Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

107.    The relief sought is common to the entire class including, inter alia:

(a)    The difference between the reduced Florida Minimum Wage and the Full Florida Minimum Wage for all servers during the previous five (5) years who were required to share their tips with supervisors, owners, managers, chefs and/or dishwashers;

(b)    Payment by the Defendants of tips unlawfully retained from March 23, 2018, through the present;

(c)    Payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or F.S. § 448.110 as a result of Defendants' intentional and/or willful violations;

(c)    Payment by the Defendants of the costs and expenses of this action, including reasonable attorney's fees of Plaintiff's counsel.

108.    Plaintiff and the Tip Credit Class members have sustained damages arising out of the same wrongful and company-wide employment policies of Defendants in violation of the FMWA and Florida Constitution.

109.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and the putative class: (a) recovery of the tip credit owed Plaintiff and the Tip Credit Class for the previous five (5) years; (b) recovery of all tips unlawfully retained from March 23, 2018, through the present; (c) liquidated damages; (d) all reasonable attorney's fees and costs as permitted under Florida law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

### COUNT II – UNLAWFUL TAKING OF TIPS – 29 U.S.C. § 216(b) / 29 U.S.C. § 203
### (UNLAWFUL TIP RETENTION)

110.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth fully herein.

111.    Plaintiff and all other similarly situated individuals customarily received tips as part of their compensation during their employment with Defendants.

112.    Pursuant to 29 U.S.C. 203(m)(2)(B), "an employer may not keep tips received by its employees for any purposes, including allowing **managers** or **supervisors** to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."[3]

---

[3] On March 23, 2018, Congress passed the Consolidated Appropriations Act of 2018 (CAA), which amended Section 230(m) to add the following language: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  The CAA also amended another FLSA provision – Section 216(b) – to state that "[a]ny employer who violates

113.     During the relevant time period, Defendants enforced a restaurant-wide policy that required Plaintiff and similarly situated restaurant servers to allow supervisors, managers, owners, chefs, and dishwashers to keep a portion of the tips restaurant servers earned.

114.     Defendants have enforced this policy for at least the previous three (3) years.

115.     Plaintiff and similarly situated Restaurant Servers are entitled to recover the tip credit **and** the sum of all tips that they were required to share with supervisors from March 23, 2018, through the present.

116.     Defendants' failure to comply with the FLSA was willful and/or intentional.

117.     Defendants knew or should have known of the pertinent FLSA laws, rules and regulations and willfully ignored them as Defendants kept a portion of servers' hard-earned tips during the course of the previous three (3) years.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and the putative class: (a) recovery of the tip credit owed Plaintiff and the Class for the previous three (3) years; (b) recovery of all tips unlawfully retained from March 23, 2018, through the present; (c) liquidated damages; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court may deems just and reasonable under the circumstances.

### COUNT III – FED. R. CIV. P. 23 CLASS ACTION
### FOR FLORIDA MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATIONS DURING LUNCH SHIFTS)

118.     Plaintiff hereby re-avers Paragraphs 1 through 66 as though set forth fully herein.

---

section 203(m)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

119.     Plaintiff and all others similarly situated are/were entitled to be paid Florida's full minimum wage during their employment with Defendants.

120.     Plaintiff and the proposed class members were subjected to similar violations of Florida law as a result of the Defendants' failure to pay them the full state minimum wage when they were required to spend more than 20% of their lunch shifts performing non-tipped duties and side work.

121.     Plaintiff seeks recovery of the ***Florida minimum wages*** under Fed. R. Civ. P. 23 for herself and the following class for Defendants' failure to pay constitutionally mandated state minimum wages:

> **All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>lunch</u> shift performing "non-tipped" duties and side work and did not receive the full applicable minimum wage for this work.**

RULE 23 CLASS ALLEGATIONS

122.     Plaintiff brings her FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class.

123.     The putative 80/20 Lunch Shift Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage based upon the Defendants requiring Plaintiff and similarly situated servers to spend more than 20% of lunch shifts performing non-tipped duties and side work.

124.     ***Numerosity:*** Defendants employed more than 50 servers at its restaurant in Orange Park, Florida during the past five (5) years who were required to spend more than 20% of their lunch shifts performing non-tipped duties and side work and were not paid pertinent Florida

minimum wage.  Given Defendants' size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

125.   Plaintiff and the 80/20 Lunch Shift Class members were subject to the same policies, including Defendants' requirement that employees spend more than 20% of a lunch shift performing non-tipped duties and side work.

126.   *Commonality*: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff.  Such questions common to the Class include, but are not limited to the following:

> (a)  Whether Plaintiff and the 80/20 Lunch Shift Class members were "employees" of Defendants;
>
> (b)  Whether Plaintiff and the 80/20 Lunch Shift Class's hours were properly recorded;
>
> (c)  Whether Defendants violated the Florida minimum wage rights of Plaintiff and the 80/20 Lunch Shift Class under the FMWA by failing to compensate the putative class full state minimum wage when they spent more than 20% of a lunch shifts performing non-tipped duties and side work;
>
> (d)  Whether Defendants willfully or intentionally refused to pay Plaintiff and the 80/20 Lunch Shift Class Florida minimum wages;
>
> (e)  Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and

(f) The nature, extent, and measure of damages suffered by the Plaintiff and the 80/20 Lunch Shift Class.

127.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the 80/20 Lunch Shift Class.  Plaintiff's claims arise from the Defendants' company-wide policy of requiring all servers to spend more than 20% of their lunch shifts on non-tipped duties and side work without being paid the full applicable Florida minimum wage.

128.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the 80/20 Lunch Shift Class.  Plaintiff has no interest that might conflict with the interests of the 80/20 Lunch Shift Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

129.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

130.    Defendants acted on grounds generally applicable to the 80/20 Lunch Shift Class, thereby making relief appropriate with respect to the 80/20 Lunch Shift Class as a whole. Prosecution of separate actions by individual members of the 80/20 Lunch Shift Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the 80/20 Lunch Shift Class that would establish incompatible standards of conduct for Defendants.

131.    The identity of the 80/20 Lunch Shift Class is readily identifiable from Defendants' records.

132.    Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the 80/20 Lunch Shift Class.

133.    Plaintiff and the 80/20 Lunch Shift Class members performed the same job duties, as restaurant servers, and were paid in an identical manner by Defendants based on Defendants requiring the restaurant servers to spend more than 20% of their lunch shift performing non-tipped duties and side work without paying the restaurant servers at least the full applicable Florida minimum wage.

134.    Plaintiff and the 80/20 Lunch Shift Class members were not paid proper Florida minimum wages when their non-tipped duties and side work exceeded 20% of any particular shift.

135.    Defendants was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the 80/20 Lunch Shift Class members in accordance with the law.

136.    This action is intended to include each and every restaurant server who worked for Defendants at its restaurant in Orange Park, Florida during the past five (5) years and was required to spend more than 20% of his/her lunch shift performing non-tipped duties and side work.

137.    During all material times hereto, Plaintiff and all 80/20 Lunch Shift Class members are/were non-exempt employees of Defendants.

138.    Restaurant servers' work for Defendants is an integral part of Defendants' business.

139.    Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative class members at least Florida's minimum wage for all hours worked.

140.    In 2017, the Florida minimum wage was $8.10 per hour.

141.    In 2018, the Florida minimum wage was $8.25.

142.    In 2019, the Florida minimum wage was $8.46.

143.    In 2020, the Florida minimum wage was $8.56.

144.    From January 1, 2021 until September 29, 2021, the Florida minimum wage was $8.65 per hour.

145.    Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

146.    During their employment, Plaintiff or one or more of the 80/20 Lunch Shift Class members complained about the illegal practices above and Defendants took no action to stop the illegal practices.

147.    The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

148.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

149.    More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative 80/20 Lunch Shift Class for the minimum wages owed.

150.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

151.    Furthermore, even if every member of the 80/20 Lunch Shift Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

152.    The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution;

(b) Payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution as a result of Defendants' intentional and/or willful violations;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

153.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the 80/20 Lunch Shift Class members have been damaged in the loss of ***Florida*** minimum wages for one or more weeks of work during the employment with Defendants.

154.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FMWA and Fla. Stat. 448.08; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## COUNT IV - COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATIONS DURING LUNCH SHIFTS)

155.    Plaintiff hereby re-avers Paragraphs 1 through 66 as though set forth fully herein.

156.    Plaintiff and all others similarly situated are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendants.

157.    Plaintiff and the proposed collective members were subjected to similar violations of federal law as a result of the Defendants' failure to pay them the full minimum wage when they were required to spend more than 20% of their shifts performing non-tipped duties and side work.

158.    Plaintiff seeks recovery of these federal minimum wages under 29 U.S.C. § 216(b) for herself and the following collective for Defendants' failure to pay federally mandated minimum wages:

> **All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>lunch</u> shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.**

159.    Defendants willfully failed to pay Plaintiff and the putative collective members the full federal minimum wage for one or more weeks of work.

160.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been damaged in the loss of federal minimum wages for one or more weeks of work during the employment with Defendants.

161.    Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

162.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated federal minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT V – FED. R. CIV. P. 23 CLASS ACTION
### FOR FLORIDA MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATIONS DURING DINNER SHIFTS)

163.    Plaintiff hereby re-avers Paragraphs 1 through 66 as though set forth fully herein.

164.    Plaintiff and all others similarly situated are/were entitled to be paid Florida's full minimum wage for certain hours worked during their employment with Defendants.

165.    Plaintiff and the proposed 80/20 Dinner Shift Class members were subjected to similar violations of state and federal law as a result of the Defendants' failure to pay them the full state minimum wage when they were required to spend more than 20% of their shifts performing non-tipped duties and side work.

166.    Plaintiff seeks recovery of the ***Florida minimum wages*** under Fed. R. Civ. P. 23 for herself and the following 80/20 Dinner Shift Class for Defendants' failure to pay constitutionally mandated state minimum wages:

> **All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>dinner</u> shift performing "non-tipped" side work and did not receive the full applicable minimum wage for this work.**

RULE 23 CLASS ALLEGATIONS

167.    Plaintiff brings her FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class.

168.    The putative 80/20 Dinner Shift Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage based upon the Defendants requiring Plaintiff and similarly situated servers to spend more than 20% of dinner shifts performing non-tipped duties and side work.

169.    ***Numerosity***: Defendants employed more than fifty (50) restaurant servers at their Orange Park, Florida restaurant during the past five (5) years who were required to spend more than 20% of their dinner shift performing non-tipped duties and responsibilities and were not paid Florida minimum wage for the work.  Given Defendants' size and the systematic nature of their failure to comply with Florida law, the members of the 80/20 Dinner Shift Class are so numerous that joinder of all members is impractical.

170.    Plaintiff and the 80/20 Dinner Shift Class members were subject to the same policies, including Defendants' requirement that employees spend more than 20% of dinner shifts performing non-tipped duties and responsibilities.

171. ***Commonality****:* Common questions of law and fact exist as to all members of the 80/20 Dinner Shift Class and predominate over any questions solely affecting any individual member of the 80/20 Dinner Shift Class, including Plaintiff.  Such questions common to the 80/20 Dinner Shift Class include, but are not limited to the following:

    (a) Whether Plaintiff and the 80/20 Dinner Shift Class members were "employees" of Defendants;

    (b) Whether Plaintiff and the Class's hours were properly recorded;

    (c) Whether Defendants violated the Florida minimum wage rights of Plaintiff and the 80/20 Dinner Shift Class under the FMWA by failing to compensate the putative class the full state minimum wage when they spent more than 20% of dinner shifts performing non-tipped duties and side work;

    (d) Whether Defendants willfully or intentionally refused to pay Plaintiff and the 80/20 Dinner Shift Class Florida minimum wages;

    (e) Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and

    (f) The nature, extent, and measure of damages suffered by the Plaintiff and the 80/20 Dinner Shift Class.

172. ***Typicality****:* Plaintiff's claims are typical of the claims of the members of the 80/20 Dinner Shift Class.  Plaintiff's claims arise from the Defendants' company-wide policy of requiring all servers to spend more than 20% of their dinner shifts performing non-tipped duties and responsibilities without being paid the full applicable Florida minimum wage.

173.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the 80/20 Dinner Shift Class.  Plaintiff has no interest that might conflict with the interests of the 80/20 Dinner Shift Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

174.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

175.    Defendants acted on grounds generally applicable to the 80/20 Dinner Shift Class, thereby making relief appropriate with respect to the 80/20 Dinner Shift Class as a whole. Prosecution of separate actions by individual members of the 80/20 Dinner Shift Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the 80/20 Dinner Shift Class that would establish incompatible standards of conduct for Defendants.

176.    The identity of the 80/20 Dinner Shift Class is readily identifiable from Defendants' records.

177.    Without a class action, Defendants will likely continue to retain the benefit of its wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the 80/20 Dinner Shift Class.

178.    Plaintiff and the 80/20 Dinner Shift Class members performed the same job duties, as restaurant servers, and were paid in an identical manner by Defendants based on Defendants requiring the restaurant servers to spend more than 20% of their dinner shift performing non-tipped duties and responsibilities without paying the restaurant servers at least the full applicable Florida minimum age.

179.    Defendants was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the 80/20 Dinner Shift Class members in accordance with the law.

180.    The precise size and identity of the 80/20 Dinner Shift Class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative 80/20 Dinner Shift Class members exceeds 50 restaurant servers.

181.    This action is intended to include each and every restaurant server who worked for Defendants at its restaurant in Orange Park, Florida during the past five (5) years who was required to spend more than 20% of his/her dinner shift performing non-tipped duties and responsibilities.

182.    During all material times hereto, Plaintiff and all 80/20 Dinner Shift Class members were non-exempt employees of Defendants.

183.    Restaurant servers' work for Defendants is an integral part of Defendants' business.

184.    Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative 80/20 Dinner Shift Class members at least Florida's minimum wage for all hours worked.

185.    In 2017, the Florida minimum wage was $8.10 per hour.

186.    In 2018, the Florida minimum wage was $8.25.

187.    In 2019, the Florida minimum wage was $8.46.

188.    In 2020, the Florida minimum wage was $8.56.

189.    From January 1, 2021 until September 29, 2021, the Florida minimum wage was $8.65 per hour.

190.    Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

191.    During their employment, Plaintiff or one or more of the 80/20 Dinner Shift Class members complained about the illegal practices above and Defendants took no action to stop the illegal practices.

192.    The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

193.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

194.    More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative 80/20 Dinner Shift Class for the minimum wages owed.

195.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

196.    Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.  Concentrating the

litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

197.     The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Minimum wage Act and Florida Constitution;

(b) Payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Minimum wage Act and Florida Constitution and as a result of Defendants' intentional and/or willful violations;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

198.     Defendants willfully failed to pay Plaintiff and the putative 80/20 Dinner Shift Class members *Florida's* full applicable minimum wage for one or more weeks of work.

199.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the 80/20 Dinner Shift Class members have been damaged in the loss of *Florida* minimum wages for one or more weeks of work during the employment with Defendants.

200.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all

reasonable attorney's fees and litigation costs as permitted under the FMWA and Fla. Stat. 448.08;

and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT VI – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATION DURING DINNER SHIFTS)

201.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth

fully herein.

202.    Plaintiff and all other similarly situated servers are/were entitled to be paid full

federal minimum wage for certain hours worked during their employment with Defendants.

203.    Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for

herself and the following collective for Defendants' failure to pay federally mandated minimum

wages:

> **All restaurant servers who worked for Defendants in Orange
> Park, Florida during the three (3) years preceding this lawsuit
> who in one or more workweeks were required to spend more
> than 20% of their <u>dinner</u> shift performing "non-tipped" duties
> and side work and did not receive the full applicable minimum
> wage for this work.**

204.    Defendants willfully failed to pay Plaintiff and the putative collective members the

full federal minimum wage for one or more weeks of work.

205.    As a direct and proximate result of Defendants' deliberate underpayment of wages,

Plaintiff and the collective members have been damaged in the loss of minimum wages for one or

more weeks of work during their employment with Defendants.

206.    Defendants' willful and/or intentional violations of entitle Plaintiff and the putative

collective members to an additional amount of liquidated, or double, damages.

207.    As a result of the violations alleged herein, Plaintiff was required to retain the

undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**COUNT XII – FED. R. CIV. P. 23 CLASS ACTION
FOR FLORIDA MINIMUM WAGE VIOLATIONS
(ARISING FROM UNPAID LABOR)**

208.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth fully herein.

209.    Plaintiff and all other similarly situated servers are/were entitled to be paid full *Florida minimum wage* for each hour worked during their employment with Defendants.

210.    Plaintiff seeks recovery of *Florida minimum wages* under Fed. R. Civ. P. 23 for herself and the following Unpaid Labor Class because of Defendants' failure to pay Florida's constitutionally mandated minimum wages:

> **All restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to work without compensation for between 30-minutes and 1-hour during any shift.**

211.    Defendants refused to compensate Plaintiff and all other servers for approximately 30-minutes to 1-hour of each work-shift. This constitutes unpaid labor which was otherwise compensable and which was unlawfully withheld from Plaintiff and other similarly situated servers during the course of the previous five (5) years.

212.    Defendants failed to maintain any time records whatsoever during all time periods relevant hereto.

213.    Plaintiff and the putative Unpaid Labor Class performed unpaid work for Defendants during the previous five (5) years that was more than *de minimus*.

214.    Because Plaintiff and all other similarly situated employees were forced to work without compensation during each work shift, Defendants are not permitted to take the applicable tip credit for this work and committed state minimum wage violations.

RULE 23 CLASS ALLEGATIONS

215.    Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all restaurant servers who worked for Defendants in Orange Park, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to work without compensation for 30-minutes to 1-hour during any work shift.

216.    The putative Unpaid Labor Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wages based upon the Defendants' class-wide requirement for servers to without compensation for 30-minutes to 1-hour per shift.

217.    ***Numerosity***: Defendants employed at least 50 restaurant servers in Orange Park, Florida during the past five (5) years who were not paid Florida minimum wage for 30-minutes to 1-hour per shift because Defendants required these employees to work off-the-clock without compensation.  Given Defendants' size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

218.    Plaintiff and the Unpaid Labor Class members were subject to the same employment policies, including the unpaid labor policy.

219.    *Commonality:* Common questions of law and fact exist as to all members of the Unpaid Labor Class and predominate over any questions solely affecting any individual member of the Unpaid Labor Class, including Plaintiff.  Such questions common to the Unpaid Labor Class include, but are not limited to, the following:

(a) Whether Plaintiff and the Unpaid Labor Class were "employees" of Defendants;

(b) Whether Plaintiff and the Unpaid Labor Class's hours were properly recorded;

(c) Whether Defendants violated the Florida minimum wage rights of Plaintiff and the Unpaid Labor Class under the Florida Minimum Wage Act and Florida Constitution by requiring 30-minutes to 1-hour of unpaid labor during work shifts;

(d) Whether Defendants willfully or intentionally refused to pay Plaintiff and the Unpaid Labor Class Florida minimum wages;

(e) Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper time-keeping and payroll practices; and

(f) The nature, extent, and measure of damages suffered by the Plaintiff and the Unpaid Labor Class based upon Defendants' conduct.

220.    *Typicality:* Plaintiff's claims are typical of the claims of the members of the Unpaid Labor Class.  Plaintiff's claims arise from the Defendants' company-wide off-the-clock policy which drove their wages below the applicable Florida minimum wage.

221.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Unpaid Labor Class.  Plaintiff has no interest that might conflict with the interests of the Unpaid Labor

Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

222.   Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

223.   Defendants has acted on grounds generally applicable to the Unpaid Labor Class, thereby making relief appropriate with respect to the Unpaid Labor Class as a whole.  Prosecution of separate actions by individual members of the Unpaid Labor Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Unpaid Labor Class that would establish incompatible standards of conduct for Defendants.

224.   Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Unpaid Labor Class.

225.   Plaintiff and the Unpaid Labor Class members performed the same job duties, as restaurant servers, and were paid in an identical manner by Defendants based on Defendants' failure to pay servers for between 30-minutes and 1-hour of work during shifts.  This caused restaurant servers' applicable wages to fall below the state minimum wage during various workweeks within the applicable statute of limitations.

226.    Defendants were aware of the requirements of the FMWA and Florida Constitution's Minimum Wage Amendment, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Unpaid Labor Class members in accordance with the law.

227.    The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative Unpaid Labor Class members exceeds 50 restaurant servers.

228.    This action is intended to include each and every restaurant server who worked for Defendants in Orange Park, Florida, during the past five (5) years who was required to work off-the-clock, without compensation.

229.    During all material times hereto, Plaintiff and all Unpaid Labor Class members were non-exempt server employees of Defendants.

230.    Plaintiff and the Unpaid Labor Class members performed work as restaurant servers which was an integral to Defendants' business operations.

231.    Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative Unpaid Labor Class members at least Florida's minimum wage for some hours worked.

232.    In 2017, the Florida minimum wage was $8.10 per hour.

233.    In 2018, the Florida minimum wage was $8.25.

234.    In 2019, the Florida minimum wage was $8.46.

235.    In 2020, the Florida minimum wage was $8.56.

236. From January 1, 2021 until September 29, 2021, the Florida minimum wage as $8.65.

237. Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

238. During their employment, Plaintiff or one or more of the Unpaid Labor Class members complained about the illegal practices above and Defendants took no action to stop the illegal practices.

239. The additional persons who may become Plaintiffs in this action are servers who were required to work without compensation for 30-minutes to 1-hour during any work shift within the previous five (5) years.

240. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand letter before this claim was filed.

241. More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative Unpaid Labor Class their Florida minimum wages.

242. The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and Florida Minimum Wage Act;

(b) Payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and Florida Minimum Wage Act as a result of Defendants' intentional and/or willful violations;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

243.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the Unpaid Labor Class members have been damaged in the loss of Florida minimum wages for one or more weeks of work during the employment with Defendants.

244.     Defendants' willful and/or intentional violations state law entitle Plaintiff and the putative Unpaid Labor Class members to an additional amount of liquidated, or double, damages.

245.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FMWA and Fla. Stat. 448.08; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**COUNT VIII – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS**
**(ARISING FROM UNPAID LABOR)**

246.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth fully herein.

247.     Plaintiff and all other similarly situated servers are/were entitled to be paid full *federal minimum wage* for all hours worked during their employment with Defendants.

248.     Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following collective because of Defendants' failure to pay federally mandated minimum wages:

**All restaurant servers who worked for Defendants in Orange Park, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to work without compensation for between 30-minutes and 1-hour during any shift.**

249.    Defendants refused to compensate Plaintiff and all other servers for approximately 30-minutes to 1-hour of work during each shift. This constitutes unpaid, off-the-clock labor which was otherwise compensable and which was unlawfully withheld from Plaintiff and other similarly situated servers during the course of the previous three (3) years.

250.    The uncompensated 30-minutes to 1-hour of work performed by Plaintiff and similarly situated servers was more than *de minimis*.

251.    Because Plaintiff and all other similarly situated employees were forced to work without compensation for 30-minutes to 1-hour, Defendants are not permitted to take the applicable tip credit.

252.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been damaged in the loss of minimum wages for one or more weeks of work during the previous three (3) years.

253.    Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

254.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated federal minimum wages; (b) an equal amount of liquidated damages; (c) all

reasonable attorney's fees and litigation costs permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## COUNT IX – COLLECTIVE ACTION FOR FEDERAL OVERTIME WAGE VIOLATIONS

255.   Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 66 as though set forth fully herein.

256.   In one or more workweeks during the relevant time period, Plaintiff and all other similarly situated employees were entitled to be paid overtime wages for certain hours work performed in excess of forty (40) in a workweek.

257.   Defendants failed to maintain time records during Plaintiff's employment period and willfully or recklessly failed to pay Plaintiff overtime wages, even when they were expressly aware that she worked over forty (40) hours in a workweek.

258.   In one or more workweeks during the relevant time period, Defendants required Plaintiff and all other servers to work without pay for 30-minutes to 1-hour.

259.   Defendants either paid Plaintiff her regular hourly rate for her work in excess of forty (40) hours per week (instead of her applicable overtime wage rate) **OR** on certain occasions, paid her nothing at all.

260.   Defendants willfully failed to pay Plaintiff and the putative collective members certain federal overtime wages in one or more workweeks during the relevant time period.

261.   As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been deprived overtime wages for one or more weeks of work during the previous three (3) years.

262.   Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

263.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MADISON SPARKS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, KYODAI SUSHI ROCK CAFÉ, INC. TAE N. OH and KYUNG EUN OH, and award Plaintiff, and all others similarly situated: (a) unliquidated federal overtime wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, MADISON SPARKS, requests and demands a trial by jury on all appropriate claims.

**Date: February 22, 2022**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on February 22, 2022.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

**SERVICE LIST**