**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**CASE NO: 3:22-cv-205-MMH-PDB**

Madison Sparks, on behalf of herself
and all others similarly situated,

    Plaintiff,

    v.

Kyodai Sushi Rock Café, Inc.,
Tae N. Oh, individually, and
Kyung Eun Oh, individually,

    Defendants.
_____/

**PLAINTIFF'S _AGREED_ MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, MADISON SPARKS ("Plaintiff"), hereby files this Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support, as follows:

    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants operate Kyodai Sushi Rock Café and Hibachi restaurant in Orange Park, Florida. Plaintiff alleges that during periods within the past 5 years Defendants

employed her and other restaurant servers (hereinafter "Servers") and failed to compensate these Servers in accordance with the Florida Minimum Wage Act ("FMWA") and provisions of the Fair Labor Standards Act ("FLSA"). Subject to Court approval, Plaintiff and Defendants (hereinafter "the Parties") have settled Plaintiff's claims on a class-wide common fund basis for significant monetary relief up to $312,500.00. The proposed settlement satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FMWA vis-à-vis the FLSA. Attached to this motion is the Declaration of Jordan Richards, Esq. (the Richards Declaration) – Plaintiff's lead counsel. *See* **Exhibit A**. The Richards Declaration provides information concerning the Stipulated Class Action Settlement Agreement (attached as Exhibit 1 to the Richards Declaration), and the accompanying exhibits thereto. With this agreed motion, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"); (2) certify the putative class of Servers; (3) name the undersigned as approved Class Counsel; (4) approve the proposed Notice of Class Action Settlement ("Notice") and direct its distribution to the class; and (5) approve the proposed schedule for final settlement approval, as outlined herein.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Allegations

Defendants have been operating in Orange Park, Florida since 1997. Including Plaintiff, there are approximately 144 current and former Servers who comprise the

2

putative Rule 23 class. *See Defendant's Responses to Interrogatory No. 6, attached hereto as* **Exhibit B**. Plaintiff filed this class action lawsuit seeking to recover unpaid wages from Defendants based on violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Florida Minimum Wage Act ("FMWA") for failure to pay proper minimum wages to herself and other Servers at the restaurant from 2017 to the present.[1] Plaintiff alleges that during periods of her employment, she and other Servers were required to work off-the-clock and were not allowed to keep all tips they earned by virtue of alleged unlawful tip distribution policy in the restaurant that allowed managers, supervisors, owners, chefs and dishwashers to receive portions of tips. Plaintiff alleges that Defendants are jointly and severally liable to her and a class of similarly situated Servers for an amount equal to the $3.02 tip credit for each hour they worked at the restaurant. *See* D.E. 1. Plaintiff, individually, also alleges that Defendants violated the FLSA's federal overtime provisions by requiring her to work in excess of 40 hours in one or more workweeks without paying her the appropriate overtime premium for those hours and that Defendants failed to maintain accurate time records for Plaintiff and all other Servers.

      This lawsuit has been pending since February 22, 2022. *See* D.E. 1. Although this settlement has been reached at a relatively early procedural posture, the Parties have engaged in extensive written discovery and voluminous document production.

---

[1] Plaintiff's complaint also alleges that servers were required to spend more than 20% of their shifts performing non-tipped duties and are were properly compensated the applicable minimum wages for time spent performing this non-tipped work, and that other off-the-clock work was performed without appropriate compensation.

3

Defendants assert a number of defenses in their Answer to the Amended Complaint and Defendants have provided verified answers to interrogatories and production of relevant documents in this case. While Defendants are willing to resolve these claims on a class-wide basis, Defendants maintain that no violations of law were committed, and if any such violations were committed, they were not willful. The Parties also continue to disagree about the scope, type, and amount of damages each Server would be entitled to receive (if any), even if Plaintiffs were ultimately to prevail in the case. Defendants assert that they always complied with applicable Florida and federal law, always paid its employees in accordance with applicable law (and sometimes overpaid employees), and never permitted non-tipped employees to retain tips from Servers. The individual Defendants, Tae N. Oh and Kyung Eun Oh, also refute that they are liable as individual employers under the FLSA.

### b. Procedural History

Plaintiff commenced this lawsuit by filing her Class Action Complaint for Damages and Demand for Jury Trial on February 22, 2022. *See* D.E. 1. Defendants answered the Complaint on March 21, 2022 [D.E. 13] and filed an Amended Answer on March 31, 2022 [D.E. 19]. Following substantial written discovery, the Parties have been engaged in extensive detailed discussions regarding resolution of this matter on a class-wide basis for several months, and ultimately agreed to proceed with class settlement discussions after exchanging hundreds of documents. *See* **Exhibit A**. These documents include, but are not limited to, work schedules, payroll reports, employee rosters, tax records, restaurant hours and posters, and other relevant information

concerning the claims alleged in this case. *See* **Exhibit A**. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Servers employed by Defendants during the relevant time period. *See* **Exhibit A**. Just weeks before depositions were to commence, the Defendants agreed to enter into a class-wide resolution to fully resolve the claims in this lawsuit and provide a common fund that will allow servers to participate in a claims process and receive significant compensation to be administered by a third-party Claims Administrator.

### c. Discovery

The Parties both propounded written discovery in this case and Defendants produced hundreds pages of documents concerning the work schedules and payroll records kept and maintained by Defendants during the relevant time period. Plaintiff propounded three separate sets of interrogatories to the Corporate Defendant, two requests for production to the Corporate Defendant, and requests for production and interrogatories to Tae N. Oh. Defendants propounded requests for production and interrogatories on Plaintiff. Following thorough responses to these discovery requests Plaintiff's counsel was satisfied that enough information was provided to allow an analysis of class-wide settlement of claims. Defendants willingly disclosed the identities of 144 members of the putative class who were employed as Servers within the applicable limitations period.

### d. Settlement Negotiations

On January 28, 2022, Plaintiff sent Defendants a pre-suit Notice pursuant to Fla. Stat. § 448.110(6) which set forth Plaintiff's class wide minimum wage demand. After engaging in extensive written discovery and prior to numerous scheduled depositions, Plaintiff tendered a revised class-wide settlement demand to Defendants which incorporated new information gained from discovery.[2] Ultimately, the Parties have engaged in hours of negotiations in this case. After lengthy and additional negotiation and further phone conferences, the Parties have now agreed to a formal Stipulated Class Action Settlement Agreement, which they are now presenting to the Court for preliminary approval. *See* Joint Stipulation of Class Action Settlement Agreement and Release attached to the Richards Declaration as Exhibit 1.

### III.   SUMMARY OF THE SETTLEMENT TERMS

#### a.   The Settlement Fund

Defendants have agreed to create a settlement fund of up to $312,500.00 (hereinafter "the Fund"). *See* Settlement Agreement attached to **Exhibit A**. The Fund will cover awards to class members, Court-approved attorney's fees and costs, Court-approved consideration payments to Plaintiff to resolve her non-FMWA individual overtime claim and for entering a mutual general release with Defendants, and the costs of administering the settlement. **Exhibit A**. This number is in line with the class-wide settlement demand that Plaintiff sent to Defendants prior to instituting the

---

[2] The pre-suit class demand sought damages in the amount of $467,496.00.

current litigation and constitutes approximately a 33% reduction from the pre-suit demand for class-wide relief.

### b. Release

Class Members who do not opt out of the settlement will release all Florida minimum wage claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id*.

### c. Eligible Class Members

The Rule 23 class consists of approximately 144 current and former Servers who performed work for Defendants at any time between February 22, 2017, and [DATE OF PRELIMINARY APPROVAL], except for those who opt out. *Id.*

### d. Allocation Formula

Although Defendants did not maintain time records during the relevant time period, they did keep work schedules from which the Parties are able to reconstruct the approximate hours worked by each Server. Class members who timely submit claim forms, will be paid pursuant to an allocation formula based on the period of time and number of shifts they worked for Defendants during the applicable limitations period. *Id.* An IRS Form W2 shall be issued by the Corporate Defendant to each Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* Pursuant to

the allocation formula, Rule 23 class members will receive $1.00[3] for every hour they worked up to a maximum of $1,180.00 for work performed within the limitations period. *See* Settlement Agreement. Under this allocation, each Server will receive compensation for up to 1,180 hours of work performed for Defendants.

### e. Attorney's Fees and Litigation Costs

Plaintiff's counsel will apply for approximately one-third (33.33333%) of the Fund as attorney's fees ($104,166.66) and reimbursable costs as well in the amount of $712.31.[4] Plaintiff's counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorney's fees, and explicitly states that it is to be considered separately from any application for

---

[3] The $1.00 recovery for each hour of work performed under the settlement constitutes approximately 1/3 of the maximum amount each Server could recover for each hour at trial in this case.

[4] This is within the range of a typical fee award in a common fund case. *See, e.g.,* Seghroughni v. Advantus Rest., Inc., 2015 WL 2255278 at *1 (M.D. Fla. 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); Wolff v. Cash 4 Titles, 2012 WL 5290155 at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered a standard in a contingency fee agreement"); Willix v. Healthfirst, Inc., 2011 WL 754862 at *7 (E.D.N.Y. 2011) ("Class Counsel's request 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…'"); Hosier v. Mattress Firm, Inc., 2012 WL 2813960 at *4 (M.D. Fla. 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorney's fees and costs); Morefield v. NoteWorld, LLC, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorney's fees); Atkinson v. Wal-Mart Stores, Inc., 2011 WL 6846747 at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees).

attorney's fees. *See* **Exhibit A**. The Court need not decide the attorney's fees and costs issue now with respect to the Rule 23 Class Settlement.

### f. Consideration for Plaintiff's Non-FMWA Overtime Wage Claim

In addition to her individual award under the allocation formula, Plaintiff will also receive payment in the amount of $12,500.00 to resolve her FLSA overtime wage claims and for a mutual general release ($2,000.00 to represent unpaid overtime wages, $2,000.00 to represent liquidated damages in connection to the overtime claim, and $8,500.00 as consideration for the mutual general release). *See* **Exhibit A, at Ex. 1**.

## IV. CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlements may be presented.

*See* Fed. R. Civ. P. 23(e); *See, also,* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")* 11.22 eq. seq. (4th ed. 2002); Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps). This process safeguards

class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, Plaintiff respectfully requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, and approving the proposed Notice and authorizing the claims administrator to send it. The parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. Within 14 days of the Court granting preliminary approval, the Defendants will provide the Claims Administrator with the full legal names and contact information for all class members. *See* Settlement Agreement at **Exhibit A**.

2. Within 14 days thereafter, the Claims Administrator will mail the Notice to class members at their last known address. *See* Settlement Agreement.

3. Class members will have 45 days after the date the Notice is mailed to opt out or object to the settlement ("Notice Period"). *Id.*

4. A final fairness hearing will be held as soon as is convenient for the Court.

5. Plaintiff will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

6. Plaintiff will contemporaneously file a Motion for Approval of Attorney's Fees and Costs when the Motion for Final Settlement Approval is filed.

7. After the fairness hearing, if the Court grants the Plaintiff's Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the

settlement will be 30 days after the Court enters its Final Order and Judgment. *See* Settlement Agreement.

8. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

9. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and the costs to the Claims Administrator, by no later than twenty-eight (28) days after the Effective Date. *Id.*

10. The Claims Administrator will pay Qualified Class Members their portion of the Net Settlement Fund, as described in the Settlement Agreement for payment to be received by Qualified Class Members no later than twenty-eight (28) days after the Effective Date. *Id.*

11. Amounts allocated to any Class Member who does not make a valid claim, or who elects to opt-out of the settlement, shall be retained by and reverted back to the Defendants. *Id.*

## V. Rule 23 Settlement Class Satisfies Requirements of Fed. R. Civ. P. 23

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits." *See, e.g.*, Kuhr v. Mayo Clinic Jacksonville, 2020 WL 5912350, at *8 (M.D. Fla. Oct. 6, 2020) (Howard, J). Before a settlement may be approved, however, a number of prerequisites must be established. First, the

11

Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair, reasonable and adequate. *See, e.g.,* In Re Checking Account Overdraft Litig., 2011 WL 5873389 at *6 (S.D. Fla. 2011); Fed. R. Civ. P. 23(e)(2), (e)(1); *see also* Kuhr, 2020 WL 5912350, at *4 (Judge Howard explaining that "[b]efore certifying a class, even where a settlement is involved, a district court must analyze the requirements of Rule 23…") (internal citations omitted).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See* Kuhr, 2020 WL 5912350, at *4; *see also* Morefield v. NoteWorld, LLC, 2012 WL 1355573 at *2 (S.D. Ga. 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *see* Kuhr, 2020 WL 5912350, at *6; *see also* Nolan v. Integrated Real Estate Processing, LP, 2009 WL 10670779, at *5 (M.D. Fla. Sept. 9, 2009) (Howard, J). Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[5] Thus, the Court should certify the settlement class.

---

[5] Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g.,* Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181 (this Honorable Court certifying opt-out Rule 23 class FMWA claims); Lopez v. Hayes Robertson Group, Inc., 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); Garcia-Celestino v. Ruiz Harvesting, Inc., 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); Rosario-Guerro v. Orange Blossom Harvesting, 265 F.R.D. 619 (M.D. Fla. 2010) (same); Napoles-Arcila v. Pero Family Farms, LLC, 2009 WL 1585970 (S.D. Fla. 2009) (same); Mesa v. Ag-Mart Produce, Inc., 2008 WL 2790224 (M.D. Fla. 2008) (same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

12

### a. Numerosity

Here, there are approximately 144 members of the proposed settlement class of Servers. "The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors." Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181, at *12 (M.D. Fla. June 12, 2014) (Howard, J). Factors that this Honorable Court has previously considered include geographic dispersion of the class members, judicial economy, and ease of identifying the members of the class and their addresses. *Id.* The Eleventh Circuit has determined that less than 21 class members is inadequate while more than 40 is adequate. *Id. citing* Bacon v. Stiefel Lab., Inc., 275 F.R.D. 681, 690 (S.D. Fla. 2011). In this case, numerosity is met and joinder is impractical because 144 putative class members exist. Moreover, the other factors considered by this Court are met because: (1) the Parties have a list of the putative class members and their last known addresses which would help to facilitate a swift and economical claims processes. Thus, the Rule 23(a)(1) numerosity requirement is met. *See id., see also* Kilgo v. Bowman Trans., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### b. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *See, e.g.,* Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1355 (11th Cir. 2009); Fabricant v. Sears

13

Roebuck, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). "The requirement is satisfied where the plaintiffs allege common or standardized conduct by the defendant directed toward members of the proposed class." Kubiak, 2014 WL 2625181, at *13 (internal quotation and citations omitted). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices relating to whether the proper tip notice was provided to Servers, whether supervisors, managers, owners and dishwashers participated in the tip pool, whether Servers were required to show up to work 30-minutes or longer before and after the restaurant was open while being paid the reduced tip page, whether Servers spent more than 20% of shifts on non-tipped duties and whether Servers were required to perform work without pay.

### c. Typicality

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See, e.g.,* Komberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984 (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"); Kubiak, 2014 WL 2625181, at *15 ("The main

focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests).

### d. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See* Fabricant, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the settlement class, and Plaintiff has retained competent counsel to represent him and the settlement class. Class Counsel here regularly engages in wage and hour class litigation in several states across the country and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. *See* **Exhibit A**. More detailed credentials for Class Counsel are provided in the Richards Declaration attached hereto. *Id.* Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See* Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000).

### e. Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 144 settlement Class Members in a single, coordinated proceeding is superior to 144 individual lawsuits addressing the same legal

and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law… ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *See, e.g.,* Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170 (11th Cir. 2010). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See* In re Checking Account Overdraft Litig., 2012 WL 4173458 at *3 (S.D. Fla. 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class and Defendants agree to the resolution proposed herein. Thus, the Court should preliminarily certify the settlement class.

### VI. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action lawsuits. *See, e.g.,* In re U.S. Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See* Leverso v. SouthTrust Bank of Ala., 18 F.3d 1531 (11th Cir. 1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *See, e.g.,* Torres v. Gristede's Operating Corp., 2010 WL 2572937 at *2 (S.D.N.Y. 2010).

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *See, e.g.,* Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149 at *2 (S.D. Fla. 2010); *see also* Kuhr, 2020 WL 5912350, at *8 (reasoning that preliminary approval was appropriate when the parties represented that they agreed to the settlement through serious, informed, arm's length, and non-collusive negotiations between counsel); *see also* Manual for Complex Litigation, Third 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"); *see also* Danieli v. IBM, 2009 WL 6583144 at *4 (S.D.N.Y. 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

### a. The Settlement is Fair, Reasonable, and Adequate

In this case, the Parties, through their counsel, engaged in "serious, informed, arm's length, and non-collusive negotiations." More specifically, Defense counsel provided Plaintiff's counsel with hundreds of documents concerning the scheduling and employment of all putative class members. In addition, counsel for the Parties spent weeks negotiating the class-wide settlement in this case. Last, the Agreement provides the putative class with a substantial portion of the unpaid wages they may be able to obtain if this case is litigated through trial. Accordingly, the settlement agreement represents a fair, reasonable and adequate resolution of this matter.

## VII. PROPOSED NOTICES ARE APPROPRIATE

The contents of the proposed Notice, which is attached as Exhibit 3 to the Richards Declaration, fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. The Notice also explains the allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorney's fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Claims Administrator will mail the Notices to the last known address of each class member within twenty-eight (28) days of the Court's preliminary approval order. *See* **Exhibit A, at Ex 1**. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class

Member for whom notices are returned as undeliverable. *Id.* Class Members will have forty-five (45) days to opt out of or object to the settlement. *Id.* Within twenty-eight (28) days of the Effective Date of the settlement, the Claims Administrator will mail Class Members their payments. *Id.*

## VIII. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's counsel, USA Employment Lawyers – Jordan Richards PLLC, Jordan Richards, Esq. and Jake Blumstein, Esq. as Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached hereto.

Plaintiff, MADISON SPARKS, now moves this Court to certify the following class of similarly situated servers: classes of similarly situated Servers:

> **All Servers who worked for Defendants at Kyodai Sushi Rock Café in Orange Park, Florida from February 22, 2017, through the date of the Court's Preliminary Approval Order.**

Plaintiff further moves the Court to enter an Order granting the relief sought in the attached Proposed Order.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to M.D. Fla. L.R. 3.01(g), prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS -
JORDAN RICHARDS, PLLC**

        1800 SE 10th Ave. Suite 205
        Fort Lauderdale, Florida 33316
        (954) 871-0050
        *Counsel for Plaintiffs*

        By: */s/ Jordan Richards*
        JORDAN RICHARDS, ESQUIRE
        Florida Bar No. 108372
        JAKE BLUMSTEIN, ESQUIRE
        Florida Bar No. 1017746
        jordan@jordanrichardspllc.com
        jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 18th day of July 2022 and served on the counsel listed below.

        By: */s/ Jordan Richards*
        JORDAN RICHARDS, ESQUIRE
        Florida Bar No. 108372

## SERVICE LIST

**P. DANIEL WILLIAMS, ESQUIRE**
Florida Bar No. 0036625
dan@magidwilliams.com
**LEONARD S. MAGID, ESQUIRE**
Florida Bar No. 0717101
Len@magidwilliams.com
MAGID & WILLIAMS, P.A.
3100 University Blvd., Suite 115
Jacksonville, FL 32216
Tel: (904) 725-6161
*Counsel for Defendants*